### SANDERS v. O'CONNOR.
No. 13436.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 23, 1936.

Rehearing Denied Nov. 27, 1936.

W. C. Gowan, H. L. Bromberg, and Bromberg, Leftwich, Carrington & Gowan, all of Dallas, for appellant.

W. J. Rutledge, Jr., of Dallas, for appellee.

BROWN, Justice.

Prior to August, 1933, appellant Sanders and one James Ditto, as lessees, occupied certain lands belonging to appellee O'Connor, and conducted a dairy thereon as partners. They had been operating at a loss and on August 1, 1933, were in arrears on the rental contract in the sum of about $3,700. A new lease was then entered into whereby the lessees obligated themselves to pay the lessor the total sum of $19,650 as rentals, which partly covered past-due rentals that were adjusted between the parties, and of course covered the rentals which were to accrue during the term of the lease. The lease was for a term of 29 months, beginning August 1, 1933, and ending December 31, 1935.

In the last lease contract, the lessor was expressly given a chattel mortgage lien upon all the personal property used by appellant and Ditto in their said dairy business to secure all the rents accrued and to accrue.

Ditto had put in this partnership venture a larger number of cows than had appellant Sanders, and Ditto had mortgaged the personal property furnished by him in the partnership project to First State Bank of Arlington, Tex., to secure an indebtedness in the sum of $6,000.

On June 14, 1934, Ditto and appellant Sanders being greatly in arrears on their rental contract, appellee O'Connor brought suit in the Ninety-Fifth district court of Dallas county against James Ditto and appellant M. C. Sanders and the First State Bank of Arlington. The petition declared upon the lease contract last above mentioned, set forth the chattel mortgage lien on all of the personal property used in connection with the dairy business being conducted by Ditto and Sanders, specifically averred that rents amounting to the sum of $4,420.64, being $355.16 accrued during the year 1933 and $4,065.48 rents accrued since January 1, 1934, were past due and unpaid, and averred that additional rents were maturing monthly in installments of $677.58, as provided for in the lease, and alleged that Ditto owed said First State Bank of Arlington a note in the principal sum of $6,000, which was secured by a chattel mortgage lien upon a portion of the property on which O'Connor claimed likewise a lien, and averred that the income from the dairy business was insufficient to meet the operating expenses and to pay the indebtedness due the said bank and the installments of rent due and accruing; that the property is perishable in its nature, and unless properly cared for, same will depreciate in value and petitioner's security will be impaired and destroyed, and that unless proper steps were taken to conserve and care for all of the property and to properly manage the same, the defendants (Ditto and Sanders) will be able to dissipate the revenues available from the property and the petitioner will lose his debt and be irreparably injured. Petitioner avers that by reason of the matters set forth a necessity exists for the appointment of a receiver to take charge of, manage, and operate all of the property during the pendency of the suit, etc.

This petition being properly verified and presented to the district court, on June 14, 1934, the trial court ordered the defendants named therein to appear and show cause on the 23d day of June, 1934, if any, why a receiver should not be appointed as prayed for.

Appellant Sanders signed and delivered a waiver of the issuance and service of citation in such suit upon him, and in the same instrument demurred generally to the petition and denied generally its averments. Appellant not only admits signing such instrument, which was filed among the papers in the said suit, but admits being pres-

ent in court on June 23, 1934, and that he heard some of the discussion with respect to the disposition of the case.

A settlement agreement was entered into, reduced to writing and duly executed on June 23, 1934, by and between appellee O'Connor, plaintiff in the said suit, James Ditto, appellant M. C. Sanders, and the above named bank. This agreement appears to have been signed "M. C. Sanders, by Rhea T. O'Connor," who, it appears from the record, likewise signed the above-mentioned waiver on the part of Sanders as attorney for Sanders, his signature appearing on the waiver and answer immediately under the personal signature of M. C. Sanders.

The substance of this settlement agreement is that O'Connor agrees to pay the said bank the sum of $5,893.55, for which he is to be subrogated to the rights of the said bank in the property securing the indebtedness due the bank; that he further agrees to pay the sum of $1,250 to Ditto and Sanders in consideration of the agreement by Ditto and Sanders to disclaim all interest in the property situated upon the premises on which said defendants were then conducting their dairy business and against which property the said O'Connor owned and claimed a chattel mortgage lien to secure the amounts due him under the said lease contract. That the said $1,250 should be applied by O'Connor ratably to the payment of claims of creditors of Ditto and Sanders, whose bills had been incurred in the operation of the dairy on the premises involved. That promptly upon the execution of the said agreement, an agreed judgment establishing and foreclosing the indebtedness and liens held by O'Connor by virtue of his lease contract and his purchase of the above-mentioned bank debt against the entire property, should be entered, and upon the approval and entry of such judgment immediate possession of such property should be delivered to O'Connor by Ditto and Sanders, but such judgment should be one in rem only and should not be a personal judgment against either Ditto or Sanders; and that O'Connor should in no way claim or have any personal indebtedness from Ditto or Sanders by reason of any deficiency which might result from a sale under foreclosure of such property. And the judgment further provided that O'Connor should in no way be or become personally liable for any indebtedness owing by Ditto and Sanders beyond the sum of $1,250 which he had

agreed to pay; and the agreement further provided that all costs incurred should be paid by O'Connor.

A judgment strictly in accordance with the above agreement was entered on June 23, 1934, and the indebtedness owed by Ditto and Sanders at such time to O'Connor is recited to be $18,089.99. This judgment appears to have been approved by Rhea T. O'Connor, attorney for appellant M. C. Sanders.

Appellant Sanders admits that he knew about this judgment, having obtained such information much less than thirty days after the judgment was rendered and entered, and admits that he employed counsel to look into the matter for him.

Nothing was done by Sanders to either set aside or modify this judgment, and no bill of review was attempted by him.

Bear in mind the fact that appellant was living on the lands in question with his wife; that he continued to live there and to work about the premises until, according to his own testimony, August 17, 1934, when he deliberately left his home and the premises without advising O'Connor of his intention to leave and without telling O'Connor where he was going or why. He testified that he left because he found out that he was "in a bad shape" with respect to the situation and because of some differences he had with his wife. He testifies that he remained away more than a month. During the time he stayed on the premises he had conversations with O'Connor, and, according to his testimony, about July 3, 1934, the name of the business was changed to O'Connor Dairy, Inc. This testimony discloses that appellant knew appellee had incorporated the business and he likewise knew that none of the stock was delivered to him and that he was not one of the incorporators.

In the early part of 1935 appellant filed the suit against appellee which is before us for review. The original petition does not appear in the transcript. The second amended petition was filed May 25, 1935, and the substance of appellant's allegations are:

The ownership by appellee of the lands leased from him by appellant and Ditto as partners operating the dairy business; the operation of such business by the parties; the execution of the last lease contract mentioned above; the provision therein for the chattel mortgage lien on all of the partnership property; that the

partners became delinquent in the rents due appellee; that appellee filed the suit for debt and foreclosure and for the appointment of a receiver for the properties and business mentioned above; that appellee, on the night of June 22, 1934, asked appellant to sign a waiver and enter his appearance in such suit and told appellant that if he would permit appellee to handle such suit as he saw fit and make whatever settlement and agreement he deemed appropriate, that appellee would protect appellant and in all things preserve his property rights in all his property and interest therein; that appellant should forego his right to a recovery of the sum of $770 paid out by him from his personal funds on debts for the account of the partnership firm composed of Ditto and Sanders; that appellee would acquire àll the right, title, and interest of Ditto in the dairy herd and in all the dairy equipment, and that the personal obligations of appellant to appellee would be paid out of appellant's part of the profits of the dairy business; that they would each put into the new partnership the property which they each would have and appellant and appellee would become and be thereafter equal joint owners of all such dairy property, free and clear of all liens, and would be equal partners in the ownership and operation of the dairy. That appellant's property had a value at such time far in excess of the obligations then due by him to appellee even at a forced sale and a value equal to the value of the property which appellee was to acquire from Ditto. That appellant orally agreed to such arrangement with appellee and in keeping therewith and in reliance upon such representations on the part of appellee, appellant signed the waiver of citation and formal answer which had been prepared by appellee or his attorney, and interposed no defense to the suit brought by appellee, employed no attorney to represent appellant and trusted appellee to handle said suit in such manner as he saw fit to protect appellant's property rights and to settle the controversies with Ditto and the said Arlington Bank. That if appellant had contested the suit he could have interposed meritorious defenses, could have required that the suit be heard in due time and the property sold if it should be ordered sold, and would have obtained bidders at such sale, and that at such forced sale the property would have brought far more than appellant's liabilities to appellee; but that appellant, in keeping with his agreement with appellee, did none of these things. That appellee did not disclose to appellant the manner in which he proposed to handle the suit and adjust the property rights involved, and that prior to the working out of a settlement agreement, appellant, at the suggestion of appellee and appellee's attorney, left the courthouse where the matter was being considered and returned to the dairy.

That in disposing of the suit appellee paid the balance due on Ditto's note owned by said bank, agreed to pay $1,250 on the debts due to other persons by Ditto and appellant, caused Ditto to disclaim all his right, title, and interest in the dairy herd and property and had appellant's name signed to such agreement to disclaim by appellee's son, Rhea Thomas O'Connor, as attorney for appellant. That appellant did not employ said O'Connor to represent him in such suit or in any other matter and did not authorize the said O'Connor, attorney, or any one else, to sign the settlement agreement and disclaimer for him or to consent that judgment be entered foreclosing the alleged lien upon appellant's property; that nevertheless a judgment was entered in such suit in accordance with the agreement which appellee had caused to be prepared, "and, premises considered, the disclaimer and judgment should be set aside and held for naught and as of no force and effect in so far as the plaintiff and the defendant in this suit are concerned."

That pursuant to his oral partnership agreement, appellant waived his claim to a return of the said $770 and did all the things which he agreed to do, and that he and appellee became equal joint owners in all of the dairy herds which were thereafter by mutual agreement appraised, and that according to such appraisal a reasonable and fair value at that time was at least $22,219.20.

That after June 23, 1934, appellant was the owner of an undivided one-half interest in such property and as such part owner was in the possession of the same and that appellee, by statements made to appellant, recognized appellant's interest in said dairy property and business and that they began to run the dairy as partners and joint owners, but that gradually appellee ignored all of appellant's rights therein and gradually changed his attitude toward appellant and stripped him of all management and control of the business, and without appellant's knowledge and con-

sent, formed a corporation under the name of O'Connor Dairy, Inc., the entire capital stock of which was paid up by the transfer of all of the livestock, machinery, dairy equipment, and supplies used theretofore in the operation of a dairy business by appellant and the said Ditto; that such acts on the part of appellee amounted to conversion on the part of appellee; that at such time of conversion appellant's one-half interest in said properties amounted to the reasonable cash market value of at least $11,109.60; that the properties involved have greatly increased in value since appellee converted them to his own use, and the reasonable cash market value now of such properties is $25,000. He pleaded for either $25,000 damages, or in the alternative for $11,109.60.

Further, he pleaded in the alternative that if the facts alleged do not as a matter of law constitute appellant and appellee equal joint owners of the said properties, then by reason of the facts alleged with reference to the statements and promises made by appellee to appellant to make him an equal partner with appellee, which agreement appellee has wholly breached, that appellant is entitled to recover damages from appellee in the sum of $25,000, such amount being the value which would have accrued to appellant upon the formation of such partnership as was agreed upon.

As a third count appellant alleged that if he be mistaken in the former counts, nevertheless appellee has been guilty of a conversion of all of appellant's interest in such property, and prayed for the highest market value from the time of conversion to the time of trial, viz., $25,000, and in the alternative for the lowest value, to wit, $15,000.

In the next count appellant alleged that the acts set forth in his petition were done by appellee "with a conscious indifference to plaintiff's rights and welfare and were, under the circumstances, oppressive conduct upon the part of plaintiff toward the defendant, by reason of which facts plaintiff should have a recovery against the defendant of exemplary damages in the sum of $15,000."

By the next count appellant alleges that he and his wife were living on the said premises and that he was engaged in conducting the said dairy, giving it his best skill and ability, but that appellee undertook to make of him a mere hired hand, ignored him in connection with the conduct of the business and did not advise with him, but made his life and his wife's life so unbearable as to cause discord between them, which discord had never theretofore existed; and because of such state of affairs appellant deemed it appropriate that he should leave temporarily, which he did. That while he was gone appellee came to the house which was occupied by appellant's wife and delivered to her a written notice to vacate the premises, at which time his conversation was of such a coarse, cold-blooded and inconsiderate nature that his wife was frightened and caused to worry and became ill and suffered a nervous breakdown, from which she was forced to be constantly under a physician's care, all as a direct and proximate result of appellee's willful and intentional injury done to appellant's wife, and for which he prayed an additional $20,-000 as damages.

Taking the view that we do of this suit, we will not attempt to give the substance of appellee's answer, but merely make the statement that it appears that every defense that could possibly be raised to such a petition was specifically brought forward in appellee's pleading.

The cause was tried to a jury, and before the court prepared the charge, appellee formally requested a peremptory instruction in his favor, which request was refused. But the court did peremptorily instruct the jury to return a verdict in appellee's favor against appellant in the sum of $19,882.72, the amount of indebtedness shown at that time to be due appellee by appellant, together with a foreclosure of the chattel mortgage and landlord's liens against all of the properties described in the last lease mentioned above.

The court submitted a charge consisting of thirteen special issues to the jury, the substance thereof and the answers being as follows:

1. Did appellant and appellee mutually agree that after appellee had disposed of the lawsuit filed by him, he and appellant would be equal joint owners of all of the herds, livestock, and equipment theretofore used in the dairy business operated by Ditto and Sanders? Answered, "Yes."

2. Did appellant and appellee mutually agree that after appellee disposed of the said suit filed by him, he and appellant would be partners in the ownership and operation of the dairy? Answered, "Yes."

3. The reasonable cash market value on November 15, 1934, of all the property which prior to June 23, 1934, belonged to Sanders individually and his half interest in the property which prior to such last named date belonged to the partnership of Ditto and Sanders? Answer: "$11,603.25."

3a. The reasonable cash market value in June, 1935, of all the property described in issue No. 3? Answer: "$17,832.45."

Number 4 inquired about the value of such property on August 31, 1934. Answer: "$11,603.25."

5. Did appellee tell appellant on or about June 22, 1934, that if appellant would sign a waiver of citation and enter his appearance in the suit theretofore filed and would permit appellee to handle such suit as he saw fit, appellee would protect appellant Sanders and his property rights in all his property and interest therein? Answered, "Yes."

Number 6 inquired whether or not appellant authorized Rhea Thomas O'Connor to sign his name to the agreement of settlement which is referred to above. This issue was not answered.

7. The reasonable cash market value on August 31, 1934, of all of the dairy herds, livestock, and equipment that were transferred to O'Connor Dairy, Inc., and formerly used in the operation of the dairy business by Ditto and Sanders? Answer: "$22,517.99."

8. Such reasonable cash market value of such property on November 15, 1934? Answer: "$22,517.99."

9. The reasonable cash market value on June 11, 1935, of such properties? Answer: "$36,789.88."

10. Did appellee, in transferring to the said corporation in payment for its capital stock, intentionally appropriate the property so transferred to his own use and benefit? Answer: "Yes."

11. In making such transfer, did appellee do so with a conscious indifference to the rights and welfare of appellant? Answer: "Yes."

12. Should appellant recover of appellee exemplary damages? Answer: "Yes."

13. The amount of exemplary damages? Answer: "$16,250.00."

We do not deem it necessary to note the many objections made, overruled, and filed by appellee to the court's charge.

Both appellant and appellee filed motions for judgment, and on July 20, 1935, after hearing such motions, the trial court entered judgment reciting that in the opinion of the court plaintiff is not entitled to recover, but that judgment should be entered in favor of defendant O'Connor against the plaintiff Sanders, and that under such disposition of the case no necessity exists for rendering judgment upon defendant's cross-action. The judgment then recites that M. C. Sanders take nothing against the defendant C. J. O'Connor, and that the cross-action of defendant is dismissed. From this judgment Sanders has appealed to the Court of Civil Appeals for the Fifth Supreme Judicial District, and the said cause was by the Supreme Court transferred to this Court of Civil Appeals.

There are nine assignments of error in appellant's brief, and he brings forward five points on which his appeal is predicated:

1. That the court erred in rendering judgment notwithstanding the verdict because a directed verdict for defendant on plaintiff's causes of action would have been grossly erroneous in that there was evidence justifying and requiring the submission to the jury of the issues which were submitted and found favorable to plaintiff, being issues material to plaintiff's causes of action as pleaded by him for breach of trust, breach of contract to form a partnership, and conversion.

2. The court erred in rendering judgment notwithstanding the verdict because even if defendant's prior judgment against plaintiff could not or should not have been vacated by the court, plaintiff's pleadings and the evidence and the verdict entitled plaintiff to damages for breach of trust, breach of contract to form a partnership, and conversion, which relief the court erroneously considered could not be granted to plaintiff without vacating the prior judgment.

3. The trial court's judgment dismissing the defendant's cross-action should be affirmed because the court erred in instructing a verdict for defendant on defendant's cross-action in the sum of $19,882.72 because such amount was excessive in that it included the individual debt of Ditto to the Arlington bank, for which debt plaintiff was in no way liable.

4. That such cross-action was properly dismissed by the trial court because the court's instructed verdict in the sum of $19,882.72 was excessive in that it includ-

ed rent yet to accrue under the lease between defendant as lessor and plaintiff and Ditto as lessees, for which plaintiff was not liable because defendant forfeited and terminated such lease.

Point 5 is presented by the appellant only in the event that "rectification of the errors asserted herein is indispensable to granting to plaintiff the measure of relief to which he is entitled and for which he prays." The point is that the court erred in entering judgment failing and refusing to vacate defendant's prior judgment against plaintiff and the purported settlement agreement between plaintiff and defendant upon which defendant's judgment was based, because such prior judgment and settlement agreement were obtained by defendant through fraud, in that defendant fraudulently promised to protect plaintiff's rights and to recognize plaintiff's equal ownership of the dairy property involved and to form a partnership with plaintiff as to such property, all of which defendant fraudulently failed and refused to do; and because plaintiff did not enter into or execute or authorize the execution on his behalf of such settlement agreement.

■ Tested by the well-known principles as set forth in Smith v. Ferrell, 44 S.W.(2d) 962, by the Commission of Appeals, appellant's pleading, as well as his evidence, were insufficient to state a cause of action to annul the settlement agreement entered into or to vacate or modify the judgment taken in accordance therewith. It being undisputed that appellant knew of such settlement agreement and of the final judgment rendered in accordance therewith, and that such knowledge was acquired much less than thirty days after judgment was rendered, and that he employed counsel to inquire into the matter for him, it follows that the duty devolved upon him to seasonably move to set aside the judgment and to cancel the purported agreement.

■ For a consideration which is good, appellant and Ditto agreed to disclaim all interest in the property in controversy and agreed to a judgment establishing the indebtedness due appellee by appellant and Ditto and foreclosing the liens owned by appellee to secure the indebtedness, and agreed to give immediate possession of the property to appellee. The valuable consideration was the agreement by appellee to pay on debts owing by appellant and Ditto the sum of $1,250, together with the further agreement not to take a personal judgment against appellant and Ditto, that is to say, in the event the property was sold and failed to bring enough to pay the established indebtedness owed by appellant and Ditto, no deficiency judgment would be taken against them by appellee. The amount of the indebtedness at the time of the taking of the judgment was $18,089.99. It is apparent that the settlement agreement and the judgment actually entered contained provisions wholly at variance with the oral agreements which appellant asserts appellee made to him prior to the making of such agreement and the taking of such judgment.

■ In this suit appellant attempts to relitigate matters which he might have interposed in a prior action but failed to so do. Appellant will not be permitted to do this. Freeman v. McAninch et al., 87 Tex. 132, 27 S.W. 97, 47 Am.St.Rep. 79.

■ If we assume that appellant can stand upon the prior oral statements and agreements which he claims were made by appellee with him prior to the making of the settlement agreement and to the entry of the aforesaid judgment, then it is evident appellant relies upon the breach of an alleged contract to form a partnership or upon a breach of trust by appellee for his recovery. Admitting that under proper circumstances a suit may be brought for damages upon the breach of an agreement to become partners and that there may be joined with such suit a cause for conversion of personal property used in a business looking to the proposed partnership, then it is apparent that appellant should have alleged damages according to the value which would have accrued to him at the formation of the partnership. This he did not do. No evidence was introduced touching this issue and the undisputed evidence discloses that the very business about which appellant claims he and appellee agreed to conduct on a partnership basis had been operating at a distinct loss under the management of appellant and his former partner Ditto. No issue was submitted to the jury to obtain a finding of the value which would have accrued to appellant at the formation of the partnership. None could have been rightfully submitted, there being no evidence raising the issue. The record is devoid of evidence establishing any specific loss on the part of appellant because the proposed partnership was not carried out. 32 Tex.Jur., p. 236, par. 14.

■ Admitting that it is possible, under a proper state of facts, that appellant could have sued appellee for conversion, it is apparent that the reasonable value of the property so converted at the time and place of its conversion could be recovered by appellant. But how are we to arrive at such net value? Under the facts and circumstances in this case, the amount of recovery by appellant could not be placed at simply the reasonable cash market value of the properties owned by appellant and converted by appellee. This is obvious because appellant admits that he was actually indebted to appellee at the time of such alleged conversion in a large sum. The indebtedness thus owed would of necessity have to be deducted from the reasonable value of the property in order to ascertain the correct amount due appellant. But appellant made no effort to have the jury find the amount of\indebtedness which he owed at the time of the alleged conversion and only asked the jury to find the value of the properties alleged to be converted.

■ The trial court instructed the jury to return a verdict in favor of appellee against appellant in the sum of $19,882.72. This was apparently computed upon the former agreed judgment taken by appellee against appellant and Ditto jointly, with its accrued interest. Appellant objects to this instructed verdict on the theory that it contains items and debts for which he was not personally liable. But he does not attempt to have the jury find the sums for which he was undoubtedly liable. However, the fact remains that such a judgment was taken against him in the former suit and that he knew of this judgment in ample time to have undertaken to either set it aside or have it modified, all of which he did not do. It is apparent that at the time of the alleged conversion, if appellant had any interest therein, such interest was completely wiped out by the indebtedness he owed appellee.

■ What we have said with reference to a conversion is equally applicable to any recovery on the theory of a breach of trust. If appellant had any cause of action against appellee for a breach of trust, it necessarily follows that his recovery must be based upon the reasonable cash market value of the properties received in trust by appellee after deducting the indebtedness which was then owed by appellant to appellee. We have shown that

no proper issues were requested and no verdict returned by the jury on which such a recovery could be found.

■ No verdict having been returned by the jury on which the trial court could have predicated a judgment for actual damages sustained by appellant, it follows that he is not entitled to exemplary damages.

Under this record, which to us presents a rather unique case, we hold that the trial court was justified in entering judgment for the appellee.

The judgment of the trial court is affirmed.