PETER SCHIAVO *v.* GERALD COZZOLINO ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and INGLIS, JS.

Argued January 9—decided February 26, 1948

*J. Warren Upson,* with whom, on the brief, was *Joseph A. Hackett,* for the appellant (defendant Cozzolino).

*Walter W. Smyth,* for the appellee (plaintiff).

INGLIS, J. In this action the plaintiff sought to recover damages for the conversion of an automobile from the defendant Cozzolino, the proprietor of a garage to which the automobile had been taken for repairs, and from the other defendant, Connor, an officer who had attempted to attach it. Cozzolino filed a counterclaim seeking to recover for storage of the car. The jury rendered a verdict for the plaintiff against Cozzolino on the complaint and counterclaim, and in favor of Connor. Cozzolino has appealed, assigning claimed error in the charge and error in the denial of his motion to set aside the verdict.

Claims of proof are as follows: The plaintiff's wife, in September, 1944, turned over to Cozzolino a car owned by the plaintiff for the purpose of having a new fender put on and painted, for the agreed price of $15. Cozzolino claims that it was agreed that he should also make other repairs to the car to get it in running order. In October, 1944, Mrs. Schiavo went to the garage to get the car and offered

to pay Cozzolino the agreed price of $15. He, however, refused to surrender the car. She claims that he refused to let her take the car until she also paid a bill claimed to be owing to him from her mother, but Cozzolino claims that he based his refusal on the fact that he had a lien on the car for an additional bill for repairs to it. He later submitted a bill for his services on the car in the total amount of $51.95. She finally decided to pay the amount of this bill in order to get possession of the car without litigation, and on December 13, 1944, tendered that amount to Cozzolino. He again refused to deliver the car, she claims because he again demanded payment for the repairs to her mother's car, but he claims because he had a further charge of $5 for work on the plaintiff's car. On December 27, 1944, the plaintiff secured a court order for the dissolution of Cozzolino's claimed lien on the car on the substitution of a bond, and this was forthwith filed with Cozzolino's attorney. Cozzolino, on the next day, and, he claims, before the bond was furnished, caused the car to be attached in an action in which, the plaintiff claims, he sought recovery for the repairs both to the plaintiff's car and that of his wife's mother. The defendant Connor served the writ by placing a "sticker" on the car, but it remained in Cozzolino's garage. In May, 1945, the attachment was released by order of court upon the plaintiff's furnishing a bond. When thereafter the plaintiff's wife went to get the car she found that the wheels were off and the car had been damaged by fire. The car remained in a garage owned by Cozzolino until the garage and the car burned in 1946.

In the course of the charge, the court stated that the "repair man had a right to hold that car for security for the payment" of his bill and pointed out

that there was a divergence in the testimony as to whether at the time Mrs. Schiavo tendered $51.95 to the defendant on December 13, 1944, the amount due him was $51.95 or $56.95. He then said: "At any rate, whatever the bill, when the city court of Waterbury properly ordered a bond to be substituted in place of that lien, Mrs. Schiavo then and there became entitled to the possession of the car. . . . So there was definitely every element of a conversion established as of December 13, when Mrs. Schiavo offered to pay the bill of $51.95 and had also furnished a fifty-dollar bond in accordance with the mandate of the city court of Waterbury." To this the defendant took exception and he now assigns it as an error.

In this part of the charge it is clear that the trial court inadvertently misstated the evidence. It told the jury that the bond for the release of the lien was furnished to the defendant on December 13, whereas the evidence of the plaintiff was that it was furnished not earlier than December 27, and the evidence of the defendant was that it was furnished on December 28. In addition the court flatly instructed the jury, in substance, that on December 13 every element of conversion had been established because the defendant had not surrendered the car when the bond was furnished.

Although a trial court is given wide latitude in this jurisdiction in its discussion of the evidence in the charge, it is nevertheless error to make incorrect statements of the evidence to such an extent that the jury will be misled on important and controlling questions of fact. *Tuckel* v. *Hartford,* 118 Conn. 334, 337, 172 A. 222. This is particularly true if the court, even through inadvertence, practically tells the jury how to decide a disputed issue of fact upon the basis

of the evidence which it misstates. To do that exceeds the court's power to comment on the evidence. *Ladd* v. *Burdge,* 132 Conn. 296, 299, 43 A. 2d 752; *Sullivan* v. *Nesbit,* 97 Conn. 474, 479, 117 A. 502.

In the present case the misstatement of the evidence was on a vital point. The jury not only returned a general verdict in favor of the plaintiff against the defendant but also, in response to an interrogatory propounded to them, found that the conversion occurred on December 13, 1944. In this they clearly followed the instructions of the court that all of the elements of a conversion were satisfied on that day because on that day the bond for the release of the lien had been furnished to the defendant. The importance of the discrepancy between what the court told them the evidence was and what the evidence actually was is apparent. If it were true, as stated by the court, that upon December 13 the plaintiff had tendered the bond, there then would clearly be no justification for the defendant's refusal to surrender the car. But, upon the claims of proof stated in the finding, there was at least the claim that the attachment of the car preceded the tender of the bond. If that were true, the refusal to surrender the car after it had been attached would not constitute a wrongful conversion. In any event, on the undisputed evidence, the bond had not been furnished by December 13. On that day the plaintiff's right to take the car depended altogether on the question whether the tender of $51.95 was an adequate tender. That was a disputed question of fact. Accordingly, for the court to instruct the jury that on that day the failure of the defendant to surrender the car constituted a conversion because the bond had been furnished combined both a misstatement of fact and an instruction to the jury as to how to de-

cide a disputed issue of fact. It had a vital influence on the jury's verdict and is therefore reversible error.

Inasmuch as the case will have to be retried because of that error in the charge, it is not necessary to pass upon the claimed error in the ruling on the motion to set aside the verdict. It will be of advantage, however, to mention one other error claimed by the defendant. He requested the court to charge the jury in substance that they could not find that a conversion had occurred on December 13, 1944, because thereafter the plaintiff elected to consider that there was a lawful attachment of the car and sought to recover possession of it by substituting a bond in lieu of the attachment. The court refused so to charge and instead did charge that there had been a conversion on December 13. The defendant's contention is that before the plaintiff can maintain this action for conversion it must appear that he abandoned the car to the defendant and that, inasmuch as it appeared from the fact that he later sought to regain possession of the car that he had not abandoned it, the court should have instructed the jury that this action was not maintainable.

It should be noted that the plaintiff's claims of proof do not present a situation where he could recover for conversion of the car on the ground that it had been seriously damaged by the fault of a bailee so as to justify him in abandoning it, under the principle stated in *Douglass* v. *Hart,* 103 Conn. 685, 690, 131 A. 401. The nature of the conversion which he claims is rather one founded on wrongful detainer. It is true that on the facts before us the only conversion involved is one based upon the tender and refusal on December 13, 1944, and that the plaintiff thereafter continued to seek to secure possession of

his car. It does not follow, however, that that conduct defeated the plaintiff's cause of action. It is well established that an owner is not held to have abandoned his property to the one converting it until the judgment which he obtains for damages for the conversion has been satisfied. Until that time he may pursue any other remedy he has, based upon his continued ownership and right to possession of the property. *Atwater* v. *Tupper,* 45 Conn. 144, 148; *Miller* v. *Hyde,* 161 Mass. 472, 474, 37 N. E. 760; *People's State Bank* v. *Kelly,* 78 Ind. App. 418, 423, 136 N. E. 30; 53 Am. Jur. 954. If the owner of property may, prior to the satisfaction of a judgment in trover, pursue any other remedies he may have, founded on the continued ownership of the property, it necessarily follows that the pursuit of those other remedies, short of complete satisfaction thereby, is not a bar to his action in trover for damages. *Russell* v. *McCall,* 141 N. Y. 437, 448, 36 N. E. 498. In other words, the abandonment of the ownership and right of possession by the owner of property which has been converted is not a necessary prerequisite to his maintaining an action in damages for its conversion, and the trial court was correct in refusing to charge that it was.

There is error, the judgment against the defendant Cozzolino is set aside and the case is remanded for a new trial solely on the issues framed on the complaint as against the defendant Cozzolino and on that defendant's substituted counterclaim.

In this opinion the other judges concurred.