**E. L. HARRIS, Appellant,**

v.

**CHRISTIANSON–KEITHLEY COMPANY et al., Appellees.**

No. 13062.

Court of Civil Appeals of Texas.

Galveston.

May 16, 1957.

Rehearing Denied June 6, 1957.

**424**

Willard C. Williams and Eastham & Williams, Houston, for appellant.

A. Guy Crouch, Alvin, and Fred L. Williams, Jr., Houston, for appellees.

GANNON, Justice.

This suit was brought by appellant, E. L. Harris, who was plaintiff below, against Christianson-Keithley Company, a partnership, to recover actual and exemplary damages based on conversion by defendants on or about May 9, 1955, of a 1955 model G. M.C. truck with an attached Marion dump bed. The truck had been purchased by the plaintiff from the defendant partnership on the 19th of January, 1955. The consideration moving from plaintiff to the defendants for the truck, consisted of a traded-in 1951 used G.M.C. truck valued by the parties at $1,591 and the agreement of the plaintiff to pay to the defendants in cash the sum of $1,624.64 on the 19th of September, 1955, and an additional sum of $1,624.64 on the 19th of September, 1956, or a deferred total balance of $3,249.28.

The sale is evidenced by an instrument denominated a Conditional Sales Contract which, under our law, is construed as a chattel mortgage. Art. 5489, Vernon's Ann. Tex.St.1925. Among its other terms, the contract provides that time is of the essence and that upon purchaser's default in payment of any installment of the purchase price seller shall have the right to declare the total unpaid balance immediately due and payable, and to take immediate possession of the truck without demand and to resell it at public or private sale, the proceeds after expenses to be applied to the unpaid purchase price, any surplus, if any, to be paid over to the purchaser—the purchaser, however, to remain liable for any deficiency, with interest.

After the expiration of the warranty period provided for in the contract, the truck became in need of repairs and was delivered to the seller for the purpose of making them. It was plaintiff's contention, upheld by the jury, that the seller agreed to make these repairs without charge. This understanding was denied by the seller who, after making the repairs, asserted a constitutional lien on the truck therefor and refused plaintiff's demand for redelivery without payment of the repair bill. Upon defendants' refusal to redeliver the truck to the plaintiff without payment of the repair bill, the plaintiff declined to pay the same, and, treating defendants' refusal of his demand as a conversion, instituted this suit seeking to recover damages.

By his petition, plaintiff alleged the value of the truck at the date of the alleged

conversion, May 9, 1955, at $4,669.65, and alleged that by reason of the conversion he was entitled to recover as actual damages said sum together with interest from May 9, 1955, until paid, and an additional sum of $6,500 alleged to be the amount of special damages suffered by plaintiff "because of the loss of the use of said truck from and after the 9th day of May, 1955." In connection with his claim of special damage alleged to result from the loss of the use of the truck, plaintiff pleaded that he had been "unable to replace said truck with another truck that could perform the required services." Other demands of plaintiff, including a claim of exemplary damages, are not involved in this appeal.

By the prayer of the petition, plaintiff asked for actual damages in the amount of the alleged value of the truck as of the date of the conversion "together with interest thereon at the rate of 6% per annum from and after the 9th day of May, 1955, until paid," and plaintiff asked additionally to his prayer for interest as damages, but not alternatively, for special damages of $6,500 for loss of use of the truck.

The answer of the defendants is lengthy. It consists of a number of special denials, but admits the refusal of defendants to redeliver possession of the truck to plaintiff, and justifies such refusal on the failure of plaintiff to pay for the repairs to the truck which defendants pleaded were made on an implied contract that plaintiff would pay the reasonable charges for same, alleged in the answer to be $431.80. Defendants pleaded that under the provisions of Sec. 37 of Art. XVI of the Constitution, Vernon's Ann.St., and of Art. 5503 of the statutes, they had a lien on the truck, entitling them to withhold possession of same from plaintiff as security for their repair bill. By the answer, defendants additionally justified their withholding of possession from September 19, 1955, forward, on the failure and refusal of plaintiff to pay the installment of the purchase price which became due at that time, claiming the right to withhold such possession because of such default un-

der the terms of the contract. Additionally, defendants cross-acted, seeking to recover for the unpaid purchase money and foreclosure of their contract lien therefor. By the cross-action defendants sought recovery as well of their repair bill and of additional amounts said to be due for storage following completion of the repairs. Defendants prayed for recovery on their cross-action for the unpaid purchase money, with foreclosure of lien; for the unpaid repair bill, with foreclosure of lien; and for storage charges, with foreclosure of warehouseman's lien.

The case was tried to a jury and submitted on special issues, those material to this appeal and the answers thereto being as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the plaintiff Harris impliedly agreed to pay the defendant Keithley the reasonable and customary charge for the repairs to the GMC truck on the occasion of the last time it was brought to the Christianson-Keithley Company?

"To which the jury answered: No."

"Special Issue No. 3

"What do you find from a preponderance of the evidence was the reasonable market value, if any, of the truck at its location in Alvin, Brazoria County, Texas, on May 9, 1955?

"To which the jury answered: $3,-000.00.

"Special Issue No. 4

"Do you find from a preponderance of the evidence that the defendant Keithley, before refusing to surrender the truck to the plaintiff, knew the extent of the use to which plaintiff could put the truck if plaintiff had same?

"To which the jury answered: No.

"Special Issue No. 5

"What do you find from a preponderance of the evidence was the loss of plaintiff's net earnings, if any, between May 9, 1955, and the commencement of this trial, resulting solely, directly and proximately from the defendant's refusal to surrender possession of the truck to plaintiff on May 9, 1955?

"To which the jury answered: $2250.00."

The trial commenced on February 13, 1956, so that the jury's finding of loss of net earnings in the amount of $2,250 would include the full period, May 10, 1955–February 12, 1956, both dates inclusive.

Shortly after the purchase and sale of the truck and the execution of the conditional sales contract to secure the unpaid purchase price, the contract was sold by defendants, Christianson-Keithley Company, to Yellow Manufacturing Acceptance Corporation of Dallas, but Christianson-Keithley Corporation were required to endorse or guarantee the contract so as to become guarantors of, or sureties for, plaintiff's obligation for the unpaid purchase money. When the first installment of the unpaid purchase price amounting to $1,624.64 became due on September 19, 1955, four months and ten days after the conversion date, plaintiff defaulted in the payment of same and remained so at all times intervening between September 19, 1955, and the commencement of the trial on February 13, 1956. During this period and on December 28, 1955, Christianson-Keithley Company repurchased the conditional sales contract which it had guaranteed Yellow Manufacturing Acceptance Corporation and matured the entire unpaid purchase money.

Under the contract and the undisputed facts, Christianson-Keithley, then being in possession of the truck, there can be no doubt their possession was no longer unlawful after December 28, 1955. Indeed, though not necessary to a decision of the case, it is our feeling that in view of their

suretyship of plaintiff's obligation for the unpaid purchase money, equity would regard Christianson-Keithley's possession as lawful at all times after plaintiff's default on September 19, 1955.

Under well-established law, the mere filing of suit by plaintiff for conversion does not effect an implied sale by plaintiff to defendants. In conversion actions title does not pass until actual satisfaction of the judgment, and plaintiff remains free at all times up until the actual payment of the judgment to avail himself of remedies consistent with the retention of title in himself. St. Louis, Arkansas & Texas Railway Co. v. McKinsey, 78 Tex. 298, 14 S.W. 645. See Schiavo v. Cozzolino, 134 Conn. 388, 57 A.2d 723, 725, 3 A.L.R.2d 214, where it is said: "It is well established that an owner is not held to have abandoned his property to the one converting it until the judgment which he obtains for damages for the conversion has been satisfied. Until that time he may pursue any other remedy he has, based upon his continued ownership and right to possession of the property." Our dictum in Hankey v. Employer's Casualty Co., Tex.Civ.App., 176 S.W. 2d 357, to the effect that when one elects to sue in trover, title passes to defendant *as of the time of the conversion,* probably went too far. The point of this is that the mortgage contract remained in effect according to its terms at all times, at least up to and including the entry of judgment, so that even though plaintiff was entitled to possession of the truck between May 9 and September 20, he ought not, in view of his default in his contract, in equity, at least, to be so regarded after September 19, 1955, and clearly was no longer entitled to possession of the truck after defendants' repurchase of the sales contract on December 28, 1955. We have been at pains to emphasize this because the answer of the jury to Special Issue No. 5 includes damages found to accrue after both September 19, 1955, and December 28, 1955,—that is, down to the date of the commencement of the trial on February 13, 1956.

After the verdict, both parties moved for judgment, plaintiff's motion asking the court to disregard the answer of the jury to Special Issue No. 4, finding that defendants did not know the extent of plaintiff's use of the truck. The basis of this was that the finding was contrary to the undisputed evidence and improper as merely evidentiary, there being no requirement in law that a defendant charged with liability for special damages have notice of the *extent* of plaintiff's contemplated use but only notice or knowledge generally of a use in business for profit.

The court rendered judgment allowing plaintiff in offset to the cross-action for the purchase money a recovery of $3,000, the market value on May 9, 1955, of the truck, as established by the verdict, together with interest on said sum *as damages* from May 9 to date of judgment. The judgment however allowed defendants recovery for the unpaid purchase money on the truck together with interest on the first installment from September 19, 1955. The judgment establishes a net balance of $209.75 as owing by plaintiff to defendants, which, together with 15% as attorney's fees, totalling $241.-21, was decreed as defendants' net recovery against plaintiff. Based perhaps on the theory of a deficit in value of the security and strict foreclosure of the purchase money lien, the judgment decrees the title and right of possession to the truck involved to be in defendants.

All costs in the trial court were taxed against plaintiff.

The appeal is based upon nine points of error, four of which are directed to the failure of the court to allow plaintiff a recovery for loss of the business profits in the amount of $2,250 established by Special Issue No. 5 of the jury verdict.

Plaintiff has established to our satisfaction that under the undisputed evidence defendants had notice of sufficient facts to apprise them of the probable loss of some profits to plaintiff as a natural and direct consequence of its act in withholding possession of the truck on May 9, 1955, and for that reason we think the answer of the jury to Special Issue No. 4 should be disregarded. It was not necessary in order to render defendants liable for special damages that they should know the *extent* of plaintiff's contemplated use of the truck. It is only necessary that a party charged with liability for such damages have notice or knowledge of sufficient facts and circumstances to put him on notice of the likelihood of plaintiff's sustaining some such damages as a natural and probable result of the unlawful detention charged against him. Dale Truck Line, Inc. v. R. & M. Well Servicing & Drilling Co., Tex.Civ.App., 286 S.W.2d 446. In the light of this principle, it is evident that the answer to the issue determines no ultimate fact, but is merely an evidentiary finding.

This brings us to the important question of whether under the facts and circumstances of this record and the verdict of the jury the court improperly disallowed plaintiff a recovery for the $2,250 figure established by the jury as plaintiff's loss of net earnings for the period after May 9 down to the date of trial. The record does not indicate the theory upon which the trial court proceeded, but we are satisfied that his refusal to render judgment for these special damages was not improper.

Firstly, we note that plaintiff asked, not alternatively, but conjunctively, both for interest as damages on the value of the truck from the date of conversion, May 9, 1955, to the date of the trial, and as well for special damages based upon loss of use of the truck. The two are inconsistent. When allowed in conversion cases, special damages are in lieu of interest, or, looking at the matter the other way around, the allowance of interest is to compensate for the loss of use of the converted property from the date of the conversion to the date of the trial. In proper cases special damages based upon loss of profits are recoverable in actions for conversion, but the plaintiff

may never recover as damages both interest, and, additionally, special compensation for the loss of use. 53 Amer.Jur., Trover and Conversion, Secs. 107, 108, p. 897, et seq., and Sec. 110, p. 898. In Sec. 107 of the cited text it is said:

"Moreover, where interest on the value of the property is awarded, the value of the use of the property from the date of the conversion may not be recovered in addition thereto, since damages for the use of the property are generally regarded as in lieu of interest."

Section 110 states:

"The allowance of interest has been based on the theory of compensation for the use of the property. * * *"

Here the plaintiff pled conjunctively two inconsistent prayers for relief. The court granted one of such prayers and denied the other. He could not grant both. Plaintiff, having been allowed one of the two inconsistent prayers for relief, is, it seems to us, in the position of having induced the very action which the court took and is not in position to complain on the general principle, as announced by the Supreme Court of Iowa in Dow v. McVey, 174 Iowa 553, 156 N.W. 706, 707: "If two inconsistent prayers for relief be made, the court can properly grant but one, and, if it grants one, the plaintiffs can make no valid complaint because it denied the other."

While we feel that plaintiff is in no position to complain of the judgment rendered since his own act in praying for interest on the judgment—the same having been allowed—should preclude him from complaining of the denial of any special damages in addition thereto, nevertheless, we think for other reasons it was not error to refuse to give effect in the judgment to the jury's answer to Special Issue No. 5 establishing plaintiff's loss of net profits during the period inquired about in the issue at $2,250.

The only fully satisfactory Texas case which we have come upon discussing the allowance of special damages for loss of use of converted property is Craddock v. Goodwin, 54 Tex. 578. There the plaintiff sued for conversion of a mare and a colt, based upon wrongful attachment. The petition alleged the mare to be of the value of $100, the colt of a value of $50. Plaintiff sought additional damages consisting of (a) $39.50, money paid out in attending court, (b) $31 for loss of time, and (c) 50 cents a day, the value of the use of the mare from the date of the conversion to the date of the trial. The charge of the court permitted recovery on the basis of all of these elements of damage. The jury returned a verdict for $200. The Supreme Court reversed, holding the charge erroneous, as plaintiff was not entitled to recover the money paid out by him in attending court or any amount for loss of his time. Addressing itself, however, to plaintiff's right to recover for value of the loss of the use of the mare from the date of conversion to the date of the trial, the court said:

"In all cases where actual damages are recoverable for unlawful taking of property, the principle which underlies the rule is, to give compensation for the injury actually sustained, and which has resulted immediately and directly from the wrong done; and when no circumstances of malice or oppression or intentional wrong or aggravation are shown, the usual measure of damages is the value of the property taken, and interest. But this rule must vary with the character and uses of the property. So in times of slavery the measure of damages for illegal taking of slaves was the value of the slave and his hire. Pridgin v. Strickland, 8 Tex. [427] 434.

"So a workman whose tools of trade were illegally levied upon, was allowed

as actual damages not merely their actual value, but for the loss sustained in being deprived of their use in the exercise of his trade.

"So for the illegal detention of a yoke of oxen, the owner was allowed to recover for their use while detained. Haviland v. Parker, 11 Mich. [103] 104.

"And there are cases in our supreme court where it has been held that, for the wrongful taking of horses or mules, the measure of damages was their value, and the value of their use or hire. This rule is recognized in Hudson v. Wilkinson, 45 Tex. [444] 445, where it is applied to the wrongful taking and detention of a wagon and team. In that case Mr. Justice Moore condemns the mode of compensation adopted, of valuing the hire by the day or the month, when the period was protracted or the litigation prolonged. It is a rule which in many cases would do simple justice, but in others might be pushed *to the verge of absurdity. It is not perhaps possible to lay down a rigid and unbending rule, applicable to all cases.* It must of necessity, as we have said, vary with the character of the property, and somewhat with *the peculiar circumstances of the case.* The thing to be kept in view is that the party shall be compensated for the injury done. *Where money or goods, having a price in market, are the subject of the wrong, the value and the value of the use of which the party has been deprived, in the shape of interest, would be adequate compensation.* It is but the application of the same rule which permits the recovery of the hire, as for the use of horses or work animals. Very clearly the seizure of the plaintiffs' plow animal or work horse in this case would be very poorly compensated for by the payment of interest for the time which they had been deprived of

them, and then only, but it is equally clear that their value and hire, measured by the month or the year for the long period since their seizure to the time of trial, would be absurdly excessive. We think no more *equitable* rule can be adopted in determining the plaintiffs' actual damages than to allow in any event, if plaintiffs made out a case for actual damages, an amount not less than the value of the property, with interest to the time of trial; but the jury should also take into consideration the value of the use or hire of the animals seized for the whole time of which the plaintiffs have been deprived of them, and allow such an amount for actual damages as will compensate the plaintiffs, *whether computing it by the rule of interest or that of hire or value of the use, as may seem to them most adequate to that result."* (Emphasis supplied.)

So far as we know, Craddock v. Goodwin has never been overruled. In fact, it is cited and quoted in Moore v. King, 4 Tex. Civ.App. 397, 23 S.W. 484, a case heavily relied on by plaintiff in this Court.

The facts and circumstances of the present record point up the wisdom and sagacity of the principles laid down in Craddock v. Goodwin. Here at the time of the conversion the truck in question had a definitely ascertainable market value and was easily and conveniently replaceable in the market. The evidence shows that as of the date of the conversion plaintiff was lessee of a sand pit which entitled him to take sand from the pit upon the payment of a royalty of 50 cents a truck load to the owner. Plaintiff as such lessee engaged in the sale of sand, delivering it to construction sites of his customers both by the use of his own trucks and by the use of hired trucks. The evidence indicates that plaintiff's profits from the sale of sand were much greater when delivered by his own trucks than when delivered by hired trucks.

When the conversion took place, plaintiff owned and was operating two of his own trucks in his sand business. It was stipulated at the trial that at the date of the conversion he owned "four or two or three [trucks], something like that"; that since the conversion he has purchased an unestablished number of new trucks and old trucks and that at the time of the trial he owned nine trucks. Plaintiff refuses to treat any of his additional truck purchases as a replacement for the converted truck on the theory that at all material times he had more sand business than his own trucks could haul, so that he had to hire trucks to take care of the business, it being his claim that had he had the use of the converted truck he would have made much more profit than he made on the hired truck, which he claims should be considered as replacement for the converted truck rather than any one of the old or new trucks purchased by him.

When one considers that the Supreme Court has expressed itself clearly on the proposition that when and under what circumstances recovery for loss of use, or alternatively of interest, will be allowed is a jury or fact question, it is readily apparent that loss of profits incurred through deprivation of use of converted articles is not recoverable as a matter of law under any and all circumstances. We emphasize the following from the Court's opinion in Craddock v. Goodwin:

> "The *jury* should also take into consideration the value of the use or hire of the animals seized for the whole time of which the plaintiffs have been deprived of them, and allow such an amount for actual damages as will compensate the plaintiffs, *whether* computing it by the rule of interest or that of hire or value of the use, *as may seem to them most adequate to that result."* (Emphasis supplied.)

If, as the Supreme Court so clearly indicates in Craddock v. Goodwin, supra, it is a fact question when and under what circumstances interest as distinguished from special damages for loss of use is to be allowed as damages for the unlawful detention of converted property, then that fact question has been determined by the court against plaintiff by an implied finding. If plaintiff desired the jury to pass on such fact question, it was his duty to prepare and request a proper damage issue with appropriate explanatory instructions, submitting it. This he failed to do. In our opinion, the implied fact finding of the trial court, that under all the circumstances of the case interest would fairly and reasonably compensate plaintiff for the loss of use of the converted truck, is amply supported by the record.

If we be wrong in holding that under all of the facts and circumstances revealed by the evidence in this case plaintiff's right to recover lost profits was a fact question, still we think there was no error in the trial court failing to give effect to the jury's finding of $2,250 for loss of use. The finding encompasses a period well beyond the time when the plaintiff, by reason of default in his mortgage contract, lost his legal right to retain possession of the truck. There is no theory, in our opinion, upon which plaintiff can recover for loss of use past December 28, 1955, at the outside. On this date, under the conditional sales contract, the defendants were clearly entitled to repossess the truck based on plaintiff's default in payment of the purchase money becoming due September 19, 1955. It is incumbent upon a plaintiff, before he can complain of the disallowance of damages, to see that his case is properly submitted and to obtain findings upon which a judgment for all legally recoverable damages may be based. Plaintiff, having failed to request an issue limited to the outside period during which he was legally entitled to the possession of the truck, is in no position to complain. See Sanders v. O'-

Connor, Tex.Civ.App., 98 S.W.2d 401, 408, where it is said:

"Admitting that it is possible, under a proper state of facts, that appellant could have sued appellee for conversion, it is apparent that the reasonable value of the property so converted at the time and place of its conversion could be recovered by appellant. But how are we to arrive at such net value? Under the facts and circumstances in this case, the amount of recovery by appellant could not be placed at simply the reasonable cash market value of the properties owned by appellant and converted by appellee. This is obvious because appellant admits that he was actually indebted to appellee at the time of such alleged conversion in a large sum. The indebtedness thus owed would of necessity have to be deducted from the reasonable value of the property in order to ascertain the correct amount due appellant. But appellant made no effort to have the jury find the amount of indebtedness which he owed at the time of the alleged conversion and only asked the jury to find the value of the properties alleged to be converted.

\* \* \* \* \* \*

"What we have said with reference to a conversion is equally applicable to any recovery on the theory of a breach of trust. If appellant had any cause of action against appellee for a breach of trust, it necessarily follows that his recovery must be based upon the reasonable cash market value of the properties received in trust by appellee after deducting the indebtedness which was then owed by appellant to appellee. We have shown that no proper issues were requested and no verdict returned by the jury on which such a recovery could be found.

"No verdict having been returned by the jury on which the trial court could have predicated a judgment for actual damages sustained by appellant, it follows that he is not entitled to exemplary damages.

"Under this record, which to us presents a rather unique case, we hold that the trial court was justified in entering judgment for the appellee.

"The judgment of the trial court is affirmed."

■ Plaintiff complains in this Court for the first time that the trial court erred in rendering judgment against him for all costs of suit. Plaintiff did not complain in the motion for new trial of the court's award of costs, nor did he file any motion in the trial court to retax costs. His complaint comes too late. See the text of 11 Tex.Jur., "Costs", Sec. 62, p. 326, where it is said, "Nor may the action of the lower court with respect to costs be reviewed on appeal unless the complaining party has properly called the attention of the trial court to the error—as in a motion for new trial, or application to have costs retaxed."

The remaining points of error complain of the admission of certain oral testimony and of letters exchanged by the defendants and a third party. It was claimed this evidence was res inter alios acta and that it was of a prejudicial nature. We are inclined to think the evidence was properly admissible on the issue of exemplary damages claimed by plaintiff. However, in any event the error in admission of the evidence was harmless. The only material finding in the verdict turns out to be that establishing the market value of the truck. None of the complained of evidence bears on this issue, nor does plaintiff complain here that the market value as found by the jury was inadequate. These points of error are overruled.

The judgment of the trial court is affirmed.