STATE OF CONNECTICUT *v.* BRENDAN LOUGHLIN

BALDWIN, C. J., KING, MURPHY, ALCORN and MACDONALD, Js.

Argued October 5—decided November 7, 1961

*Edward N. Shay,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellant (defendant).

*Arthur T. Gorman,* state's attorney, for the appellee (state).

ALCORN, J. The defendant was convicted of the crime of statutory arson. He appeals from the judgment rendered on the verdict, claiming error in the charge to the jury. The fact that the crime of arson had been committed was not contested at the trial. The disputed issue before the jury was the

defendant's participation in the crime as an accessory under General Statutes § 54-196.

The defendant assigns error in the court's refusal to find facts by judicial notice of the files of another case. The result which we reach in this appeal would not be affected if the material which the defendant seeks to have added to the finding were included. Consequently, the request for a correction of the finding need not be further considered. *Herzog* v. *Cooke*, 99 Conn. 366, 367, 121 A. 868.

It appears that in the early evening of September 14, 1958, the defendant, then seventeen years old, met seven other youths, whose ages ranged from sixteen to eighteen, at an eating place in West Haven. The state claimed to have proved that at that time and place the group, including the defendant, planned to burn a barn. This the defendant denied. The eight youths left the eating place in two automobiles, each carrying four of the group. A Volkswagen driven by Charles W. Gebauer, Jr., had Russell J. Sperry as a passenger in the front seat. A Buick driven by Michael W. Bayliss had the defendant as a front seat passenger. The two cars, with Gebauer's in the lead, drove to Orange, Connecticut.

The state claimed to have proved the following: In Orange, the Gebauer car entered Lambert Road and, as it did so, one of the occupants noticed a barn and suggested that it be burned. Everyone in the car agreed. The car was stopped beside the road. The Bayliss car pulled alongside and stopped. The occupants of the two cars thereupon discussed burning the barn. Both cars were then turned around and, the Gebauer car still in the lead, were driven to Orange Center Road, where they were stopped at a point opposite the barn. One youth got out of

the Bayliss car, and two others got out of the Gebauer car. These three held a conversation in the road. The defendant overheard parts of the conversation relating to burning the barn. Because someone suggested that the cars be kept moving to avoid suspicion, both cars, with Gebauer's in the lead, were driven down the road, turned around, driven back to the barn and stopped. On being called "chicken" by one of the three who had previously alighted, another youth got out of the Bayliss car and joined them. The two cars again moved on, with Sperry as the only passenger in the Gebauer car and the defendant as the only passenger in the Bayliss car. The four who had left the cars walked to the barn, and two of them set fire to it. They were picked up after the fire was set, and all eight rode to a vantage point from which to watch the barn burn. Neither Sperry nor the defendant had left the car in which he was riding.

The defendant claimed to have proved the following: The cars did not enter Lambert Road, no conversation took place there, and the first he heard of anything concerning the burning of a barn was when the three youths who had gotten out of the cars were talking in Orange Center Road near the barn. The defendant did nothing to set or aid in setting the fire, said nothing to anyone on the subject, and had no knowledge of any plan to burn the barn until he overheard the conversation just referred to. He did not believe the barn had been set afire until he saw it burning. Sperry's position in the other car and his activity in the episode were substantially the same as the defendant's.

The parties have stipulated that there was no evidence that Sperry had pleaded guilty. The defendant claimed to have proved that there was no evi-

dence that Sperry was charged either with the crime of arson or with being an accessory, and no evidence that he pleaded guilty to any such charge. The state concedes that neither Sperry nor the defendant ever left the right front seat of the car in which he was riding.

The court charged the jury on statutory arson and the statute concerning accessories. General Statutes §§ 53-82, 53-83, 54-196. No exception to this charge was taken. In relating the parties' conflicting claims as to the facts to the statute concerning accessories (§ 54-196), the court referred to the testimony of Frederick A. Altschuler and James E. McCormick, who, the state claimed, actually set the fire, and to the testimony of Sperry, as follows: "Sperry testified that he heard the matter discussed, McCormick testified that he heard the matter discussed, and Altschuler testified that he heard the matter discussed, and the matter discussed was the burning of the barn. Sperry testified that he did not get out of the car, that he and Loughlin were the two who did not get out of the car. There was also testimony of the fact that Sperry has pleaded guilty." At the conclusion of the charge, the defendant excepted to the quoted passage as it referred to Sperry.

During their deliberations, the jury requested further instructions concerning accessories. The court complied without exception being taken and then added: "Well, there is another matter. Counsel has called my attention to the fact that the witness Sperry was on the stand and I told you he did not get out of the car, and I told you that the fact that he had pleaded guilty was a matter that you could take into consideration in this case. Counsel said he did not recall any evidence of the fact that

he had stated he had pleaded guilty. That presents a question of fact. I thought that he had. If he has not, you will dispel that completely from your minds and give it no concern at all. That presents a question of fact." To this further charge the defendant excepted, claiming, in substance, that the court not only had failed to correct the original charge but had increased its prejudicial effect and left, as a question of fact for the jury, the conflict between the court's recollection as to any testimony concerning Sperry's guilty plea and counsel's recollection.

The state concedes that the court erred in instructing the jury that there was evidence of a guilty plea by Sperry. The question, therefore, is whether the error was harmful. "Any improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." *St. Martin* v. *New York, N.H. & H.R. Co.*, 89 Conn. 405, 411, 94 A. 279; see *State* v. *Raymond,* 88 Conn. 148, 149, 89 A. 1118. The court's original reference to Sperry's guilty plea called the attention of the jury to evidence which was not in the case and which would have been admissible, if at all, only for the purpose of attacking Sperry's credibility as a witness. Yet the court laid this nonexistent fact before the jury—along with other facts tending to demonstrate a similarity between Sperry's part in the crime and the defendant's part —as bearing on the issue of the defendant's guilt as an accessory. The possible effect of such an instruction on the judgment of the jury was to suggest that Sperry's plea, in view of the similarity of circumstances, was a fact tending to prove the defendant's guilt. Sperry's plea would not, however,

be admissible for that purpose. *State* v. *Gargano,* 99 Conn. 103, 107, 121 A. 657; *United States* v. *Toner,* 173 F.2d 140, 142 (3d Cir.). The court thus directed the jury's attention to supposed testimony which was not in evidence in proof of a vital element in the case which that testimony, if it had been present, could not tend to prove. This was erroneous. *Hope* v. *Valente,* 84 Conn. 248, 254, 79 A. 583.

Because of the limited issue confronting them, the jury necessarily centered their attention on the question of the defendant's guilt as an accessory, as is demonstrated by the request for further instructions. If further unexceptionable instructions had corrected the original error before the jury had completed their deliberations the harm might have been removed. *Danehy* v. *Metz,* 140 Conn. 376, 381, 100 A.2d 843; *Hurlburt* v. *Sherman,* 116 Conn. 102, 107, 163 A. 603. The court did not, however, remove the erroneous statement from the jury's consideration. Instead of categorically eliminating it, the court left it to the jury to determine whether the court's recollection as to the existence of the testimony was correct or whether counsel's recollection was correct. In so doing, the court did not remedy the original harm. See *Schiavo* v. *Cozzolino,* 134 Conn. 388, 391, 57 A.2d 723; *First National Bank* v. *Brenner,* 82 Conn. 29, 32, 72 A. 582. "A judge presiding at a jury trial occupies a role of inherent power and dignity that commands a deference from the jury impossible to appraise precisely. What he tells the jury about the . . . case has great weight with them." *LaChase* v. *Sanders,* 142 Conn. 122, 124, 111 A.2d 690. By setting its own recollection against that of counsel, the court allowed a large measure of risk to remain that the jury would, mistakenly, recall that the disputed evidence had

been offered. If they did, the harm flowing from the original instruction remained. Although there was other evidence which, if believed, would support the verdict, the part played by the nonexistent evidence alluded to in the charge cannot be known. Since the error may well have affected the jury's judgment, it cannot be said to be harmless. *Tuckel v. Hartford,* 118 Conn. 334, 337, 172 A. 222; *Amato v. Desenti,* 117 Conn. 612, 617, 169 A. 611.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.