NO. 07-05-0138-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 8, 2007
_____

FIRST STATE BANK, N.A.,

Appellant

v.

C.D. MORSE D/B/A 38TH & Q AUTO,

Appellee
_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-519,190; HON. BLAIR CHERRY, JR., PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., CAMPBELL, J., and REAVIS, S.J.[1]

First State Bank (First State) appeals from a judgment rendered in favor of C.D. Morse d/b/a 38th & Q Auto (Morse). Via six issues, it contends that the trial court erred in 1) entering judgment on responses to jury questions concerning negligence, 2) granting judgment on insufficient evidence, 3) admitting purported expert testimony of lost profits, and 4) entering judgment on factually insufficient evidence supporting the jury's

[1]Don Reavis, Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

determination regarding comparative responsibility, joint enterprise and agency. On cross appeal, Morse contends that the trial court erred by 1) failing to submit a charge involving the Texas Theft Liability Act and gross negligence, 2) failing to impose a constructive trust for the benefit of Morse and 3) disregarding the jury's answer on the issue of conversion. We affirm in part and reverse and render in part.

## *Background*

The dispute arose when First State released to Monte Scarbrough a large number of car titles owned by Morse. First State had held the titles as collateral for a floor plan line of credit it extended to Morse. Furthermore, the latter testified that he had directed First State to refrain from releasing the documents to anyone other than himself and an individual named Lopez. Nonetheless, First State gave Scarbrough the titles without Morse's approval. Scarbrough then sold various of the vehicles represented by the titles and used the proceeds to reduce his own separate debt owed to First State.

## *Issues One and Two – Negligence Finding*

Through its first two issues, First State attacks the jury's finding of negligence. Purportedly, it had no duty regarding *viz* the preservation of the titles, and the evidence of causation was non-existent or factually insufficient. We sustain the latter, which dispenses with the need to address the former.[2]

According to First State the evidence is deficient because it did not foresee "that Scarbrough would misappropriate titles, vehicles and funds." Moreover, the damages

---

[2]Consequently, we will not address whether §9.207(a) of the Texas Business and Commerce Code provided the duty allegedly missing. That provision obligates a secured party possessing the collateral of its debtor to use reasonable care in the custody and preservation of that collateral. TEX. BUS. & COMM. CODE ANN. §9.207(a) (Vernon Supp. 2006).

2

purportedly suffered arose not from its decision to release the titles to him but its successor's decision "to terminate immediate credit to Morse at any time, without regard to whether it had extended such privilege in the past."[3] We sustain the argument in part.

The applicable standard of review is well known and needs little explanation. Regarding the matter of legal sufficiency, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). And, in deciding that, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* Concerning the factual sufficiency of the evidence, we assess the quantum of evidence supporting the verdict and determine whether it was too weak or somehow overwhelmed by the contrary evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986), *overruled on other grounds by Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) (holding that the court of appeals must consider and weigh all of the evidence, and may only set aside the finding if the evidence is so weak, or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust).

Next, to satisfy the element of causation under a claim of negligence, the proponent must prove that the breached duty was both a cause in fact of the injury and that injury arising from the act was reasonably foreseeable. *Read v. Scott Fetzer Co.*, 990 S.W.3d 732, 737 (Tex. 1998); *Schneider v. Haws*, 118 S.W.3d 886, 892 (Tex. App.–Amarillo 2003, no pet.). To be a cause in fact, there need only be a reasonable probability that the act or

---

[3]First State was acquired by State National Bank shortly after Morse's car titles were delivered to Scarbrough.

3

omission gave rise to the harm. *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 399-400 (Tex. 1993); *Schneider v. Haws*, 118 S.W.3d at 892. And, such a probability exists if the act or omission was a substantial factor in bringing about an injury, without which the harm would not have occurred. *Schneider v.* Haws, 118 S.W.3d at 892. Regarding foreseeability, it requires proof that a person of ordinary intelligence should have anticipated the danger caused by the negligent act or omission. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995). With this said, we turn to the evidence of record.

It cannot be denied that before Scarbrough could effectuate the sale of the vehicles and convert the proceeds, he had to acquire the titles. Since First State held them, their release by that entity was elemental to the success of his plan. Thus, in First State's releasing them to Scarbrough contrary to the directives of Morse and its duties to exercise reasonable care over (and to preserve) the collateral, a jury had reasonable basis to conclude that First State's act was a substantial factor in bringing about the injury suffered by Morse. At the very least, a jury could so reasonably conclude if it accepted Morse's testimony as true.

Regarding the element of foreseeability, we note that the injury at issue stemmed from two roots. One involved First State's act of releasing the titles to Scarbrough. The second encompassed his conversion of those titles to his own benefit. Furthermore, the record illustrates that Morse had, on many occasions, authorized First State to release car titles to Scarbrough. Yet, nowhere are we cited to evidence of prior misconduct by Scarbrough *viz* those titles or his activities in general. Nor did we find any evidence of

4

misconduct of the ilk that would have placed First State on notice that Scarbrough may use the titles for his personal, unlawful gain. Indeed, Morse himself stated that he did not distrust Scarbrough before the incident in question. Similarly, Edwina Meyer (the bank employee who normally dealt with Scarbrough) stated that she could not recall Morse complaining about Scarbrough's integrity, honesty, or performance. Nor could she recall being told that Scarbrough should be watched. And, when asked if anyone had "ever report[ed] to [her] any problem" regarding the relationship between Scarbrough and Morse, she answered "no."

It has long been the rule that the criminal conduct of a third party normally constitutes a superseding cause relieving a negligent actor of liability. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999); *Nixon v. Mr. Prop. Mgt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Pichardo v. Big Diamond, Inc.*, 215 S.W.3d 497, 501 (Tex. App.–Fort Worth 2007, no pet.). Though an exception to the rule arises when the criminal conduct is foreseeable, *Pichardo v. Big Diamond, Inc.,* 215 S.W.3d at 501, the testimony of Morse and Meyer and the dearth of evidence regarding Scarbrough's potential for criminal activity before he converted the titles, negates its application here. Simply put, no evidence exists of record from which a reasonable jury could infer that First State should or could have foreseen Scarbrough's misconduct. So, since the second element of causation is missing, the jury's finding of negligence on the part of First State is legally unfounded.

### *Remaining Issues*

Having resolved issue two as we did, we need not address First State's fourth issue concerning comparative responsibility. Yet, its others as well as those of Morse that

5

necessitate review.  Moreover, we will address Morse's issues next since their resolution affects disposition of First State's remaining issues.

*Theft Liability Act Submission*

Morse contends that the trial court erred by failing to include in its jury charge an issue encompassing the Texas Theft Liability Act.  This was error because evidence of record purportedly existed illustrating that First State "appropriated Morse's property without his consent and not only intended to deprive Morse of his property, but in fact did deprive [him] of [it]."  We disagree and overrule the issue.

According to statute, a person "who commits theft is liable for the damages resulting from the theft."  TEX. CIV. PRAC. & REM. CODE ANN. §134.003 (Vernon 2005).  Per this statute, theft is defined as unlawfully appropriating property or unlawfully obtaining services as described by §§ 31.03 through 31.07 and §§ 31.11 through 31.14 of the Texas Penal Code.  *Id.* §134.002(2).  Of those various sections only one is potentially relevant to the dispute before us.  It is found in §31.03 and states that a person commits theft if he unlawfully appropriates property with intent to deprive the owner of it.  TEX. PENAL CODE ANN. §31.03(a) (Vernon Supp. 2006).  Additionally, the intent to deprive contemplated under §31.03(a) must exist at the time of the taking or exchange.  *Reed v. State*, 717 S.W.2d 643, 645 (Tex. App.–Amarillo 1986, no pet.).

While it may be that First State may have delivered the titles to Scarbrough in violation of Morse's directives, that, at best, merely signifies a possible misappropriation.  TEX. PENAL CODE ANN. §31.03(b)(1) (Vernon Supp. 2006) (stating that an appropriation is unlawful if it is without the owner's effective consent).  It does not establish the requisite

6

intent, however. Again, no evidence appears of record establishing that at the time First State delivered the titles to Scarbrough it intended to deprive Morse of them. The business history between First State, Morse, and Scarbrough often involved Scarbrough obtaining possession of car titles and disposing of them in a manner acceptable to or approved by Morse. Nothing of record suggests First State thought or knew that Scarbrough's course of conduct would be any different when he came to retrieve the titles now at issue. Furthermore, it is too great a leap to say that because Scarbrough owed First State large sums of money and proceeds from the sale of six cars were eventually deposited with First State to reduce his personal debt, First State must have either known Scarbrough intended to use the titles for his own benefit or intended to deprive Morse of them. More is needed to bridge the gap for the former proposition does not alone necessarily synthesize into the latter hypothesis. So, without evidence of the requisite intent, the trial court did not abuse its discretion in refusing to submit the question. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000) (stating that a trial court does not err when omitting to instruct the jury on an issue having no evidentiary support).

*Gross Negligence*

Morse also asserts that the trial court erred by refusing to submit a question on First State's supposed gross negligence. We disagree and overrule the issue.

Assuming *arguendo* that one could be grossly negligent when the evidence fails to even establish simple negligence, the former requires an act or omission which, when viewed objectively from the standpoint of the actor at the *time of occurrence,* involved an extreme degree of risk about which the actor subjectively knew but disregarded. *See* TEX.

CIV. PRAC. & REM. CODE ANN. §41.001(11) (Vernon Supp. 2006) (defining gross negligence). The same indicia or lack of evidence which compelled us to sustain First State's second issue and Morse's issue regarding the Theft Liability Act compels the same result here.

Again, there is no evidence from which a reasonable jury could infer Scarbrough's intent or prospective misconduct. Without that, we cannot say that an extreme degree of risk existed of which First State could know and disregard.

*Constructive Trust*

Next, Morse complains about the trial court's refusal to place a constructive trust upon certificates of deposit owned by Scarbrough. Allegedly, First State agreed that the funds represented by those certificates would be used for his (Morse's) "protection."[4] This concession purportedly was made to induce him to deal with Scarbrough. Apparently, the deposits, which approximated $99,000, were eventually offset by First State to satisfy the individual debt due from Scarbrough to First State. We overrule the issue.

Assuming the representations were made for the purposes mentioned, Morse cites us to no evidence illustrating that the res or property to be captured via the constructive trust was in existence at the time of trial. *See Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.–Corpus Christi 2002, pet. denied) (requiring, among other things, "[t]racing to an identifiable res"). That being required to obtain the trust and it having not been

---

[4]Morse, through his attorney, told the trial court that the monies in question were "to be Monte's [or Scarbrough's] money, but to be there to protect [Morse] in case something went wrong with Monte buying and selling through [Morse's] line [of credit]."

8

established, we cannot say that Morse proved his entitlement to the relief sought.

*Conversion*

Next, Morse argues that the trial court erred in refusing to enter judgment upon the jury's finding that First State converted six of the car titles it gave to Scarbrough. We sustain the issue.

One converts property when he exercises dominion and control over it in disregard to the rights of the owner. *Sunray Enterpr., Inc. v. Rosenaur*, 335 S.W.2d 670, 672 (Tex. Civ. App.–Dallas 1960, writ ref'd n.r.e). Appearing of record is evidence that 1) Morse owned the car titles in question, 2) First State properly acquired them as collateral but agreed to release them as needed and as approved by Morse, 3) Morse directed First State not to release them to Scarbrough without his (Morse's) prior approval, and 4) First State intentionally delivered them to Scarbrough (a person who had no claim to them) in violation of Morse's directive. That is some evidence upon which the jury could reasonably find, if it cared to, that First State exercised dominion and control over the chattel in disregard of Morse's ownership interests. In other words, the record contains evidence supporting the jury's verdict regarding conversion, and the trial court erred in disregarding that finding.

First State makes much about a purported lack of demand by Morse upon it for the return of the titles. While such a demand may normally be required when the defendant's initial possession of the property is lawful, that is not true if the conversion is complete, *Autry v. Dearman*, 933 S.W.2d 182, 191-92 (Tex. App.–Houston [14th Dist.] 1996, writ denied), or demand would be useless. *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex. Civ.

9

App.–Corpus Christi 1979, no writ). Having already released the titles when the act was discovered by Morse, First State no longer had them to return. So, it can be said that 1) the conversion was complete upon their relinquishment to Scarbrough, 2) requiring Morse to demand their return could reasonably be viewed as a useless act, and 3) First State's argument is erroneous.

*Unauthorized Advance*

Next, Morse argues that the trial court erred in denying him $103,150 awarded by the jury and representing the amount "for an unauthorized advance on [Morse's] floor plan." We overrule the issue for several reasons.

Morse does not contest First State's justification that the award was already encompassed within the $280,098.50 awarded for the loss of the 19 car titles. The law abhors multiple recoveries for the same injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1991).

Second, the "unauthorized advance" reflected the value of six cars Scarbrough sold after improperly obtaining the titles from First State. Those six cars were originally on Morse's floor plan; so, he was liable for that portion of the loan they represented. Furthermore, that liability would remain his *viz* First State even though Scarbrough effectively converted the vehicles. So, in short, he is not entitled to a credit against his loan since the debt was still due First State.

*Attorney's Fees*

Lastly, Morse contends that the trial court erred in denying him $50,000 in attorney's fees incurred "in defending the claims of the Auto Auctions."[5] We overrule the issue.

---

[5]Various auto auctions had sued Morse upon checks he had written but were dishonored by First State.

10

Normally, attorney's fees cannot be recovered absent a contract or statute allowing for same. *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). Morse cites us to no contract or statute authorizing the award in question.

Second, the fees were awarded as damages arising from First State's purported negligence. Thus, the receipt was contingent, at the very least, upon the validity of the negligence finding; that is, unless First State was negligent and that negligence proximately caused injury, there would be no need to award damages to redress that injury. Moreover, having previously held that the trial court erred in entering judgment upon the claim of negligence, we conclude (as we did in addressing the preceding issue) that there is no longer any foundation for the recovery of the $50,000.

*Lost Profits – Inadmissible Expert Testimony*

Having disposed of Morse's cross-points, we now return to the issues raised by First State. The next one we address concerns the jury award of lost profits to Morse. First State posits that such damages should not have been awarded since, among other things, the expert testimony on the matter offered by Morse was deficient. We sustain the issue but not for reasons offered by First State. Rather, the topic is moot given our holding *viz* the claim of negligence.

The jury awarded Morse lost profits as damages related to his negligence and conversion claims. Yet, in addressing the jury's finding of negligence, we determined that Morse failed to prove the foreseeability element of causation. Thus, the negligence finding could not stand, and because it could not, the damages related to that claim were not recoverable. A similar problem envelops the lost profits awarded as part of the damages awarded Morse for conversion.

11

Simply stated, the absence of evidence indicating that Scarbrough's theft was foreseeable negates the recovery. This is so because while lost profits may be recoverable to redress a conversion, *Harris v. Christianson-Keithley Co.*, 303 S.W.2d 422, 427-28 (Tex. Civ. App.–Galveston 1957, writ ref'd n.r.e.), they must naturally and *proximately* arise from the defendant's wrong. *Groves v. Hanks*, 546 S.W.2d 638, 647-48 (Tex. Civ. App.–Corpus Christi 1976, writ ref'd n.r.e.). In other words, they must be a foreseeable consequence of the misconduct. *Harris v. Christianson-Keithley Co.*, 303 S.W.2d at 427 (stating that to be liable for special damages such as lost profits, the defendant must have notice or knowledge of sufficient facts and circumstances to put him on notice of the likelihood of the plaintiff sustaining some such damage as a natural and probable result of the conversion). Given the dearth of evidence regarding the foreseeability of Scarbrough's theft, we must logically conclude that no evidence supports a finding that the lost profits related to that theft were foreseeable. In short, if one cannot foresee a particular theft, one cannot foresee the consequences of that theft.[6] Thus, we need not consider whether the expert testimony offered by Morse was either admissible or supported the award of lost profits arising from the conversion.

---

[6] Our determination would also negate recovery for the damages found by the jury in answer to "Question 7" of the trial court's charge. Those damages evince special damages akin to lost profits that must naturally and *proximately* flow from the tort. *See United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147-48 (Tex. 1997) (holding that actual, as opposed to special, damages arising from a conversion consist of the fair market value of the property converted); *Harris v. Christianson-Keithley Co.*, 303 S.W.2d 422, 427-28 (Tex. Civ. App.–Galveston 1957, writ ref'd n.r.e.) (stating that to be liable for special damages such as lost profits, the defendant must have notice or knowledge of sufficient facts and circumstances to put him on notice of the likelihood of the plaintiff sustaining some such damage as a natural and probable result of the conversion).

*Joint Enterprise*

Next, First State argues that factually insufficient evidence supports the finding that Scarbrough and Morse were not engaged in a joint enterprise when Scarbrough gave Morse a check for $88,085.00 and Morse deposited it in his (Morse's) account. We disagree and overrule the issue.

A joint enterprise exists when the persons concerned have 1) either an express or implied agreement with respect to the enterprise or endeavor, 2) a common purpose, 3) a community of pecuniary interests in that purpose, and (4) an equal right to direct and control the enterprise. *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002); *Watts v. Green,* 190 S.W.3d 44, 50 (Tex. App.–Amarillo 2005, no pet.); RESTATEMENT (SECOND) OF TORTS, § 491 (1965).

Regarding the element of control and voice, more than some evidence illustrates the absence of a joint enterprise. For instance, Morse decided where to bank and how to finance his own business operations when it came to allowing others to use his dealer's license to buy and sell cars. He, not Scarbrough, was liable for the floor plan loan from First State and had to authorize release of the car titles. Furthermore, others also utilized Morse's dealer's license to buy and sell vehicles much like Scarbrough. In turn, Scarbrough testified that he had his own business accounts and line of credit, and Morse was not a signatory on them. So too did Scarbrough have the authority to buy the cars he selected at the price he selected. In exchange for enjoying the opportunity to do so through use of Morse's license, Scarbrough paid him $85 per car whether or not a profit on the transaction was made. And, to the extent that a profit was made, it belonged to Scarbrough, not Morse.

13

In view of the foregoing, the business relationship between the two individuals could be likened to one of a licensee and licensor as opposed to a joint enterprise. One sold and the other bought the chance to deal in the auto trade, and each was in control of their respective part of that relationship though they profited off each other. So, substantial (as opposed to weak) evidence supported the finding that the two did not enjoy joint control over their respective interests when it came to their business relationship and Morse's payment of the debt due the auto auctions. Moreover, that finding is not overwhelmed by any contrary evidence.

*Scarbrough's Capacity as Morse's Agent*

Finally, First State contests the jury's finding that Scarbrough was not the agent of Morse when he obtained from First State the car titles at issue. The finding was purportedly "contrary to the great weight and preponderance of the evidence" or factually insufficient to support the verdict. We overrule the issue.

To establish an agency relationship, one must present evidence illustrating that the alleged principal intended for another to act for him, and the supposed agent must intend to accept that authority and act upon it. *Grisson v. Watson*, 704 S.W.2d 325, 326 (Tex. 1986). The evidence mentioned in our discussion of joint enterprise not only negates the existence of a joint enterprise between Morse and Scarbrough but also the existence of an agency relationship between the two. Each operated their own business and managed their own accounts. Moreover, Scarbrough had to pay Morse for using the latter's auto dealer's license. Simply put, the record evidence illustrating that Morse did not intend Scarbrough to act for him and that Scarbrough did not intend to accept that relationship is

14

neither weak nor overwhelmingly outweighed by contrary evidence. Thus, we must accept the jury's verdict on the matter.

Accordingly, we reverse those portions of the judgment 1) denying Morse recovery upon the jury finding that First State converted property of Morse and 2) awarding Morse damages against First State for negligence. We modify the judgment to award Morse the damages found by the jury in answer to "Question 6" appearing as a subcategory denominated "Proceeds from Motor vehicle certificate of title, if any," *i.e.* $280,098.50, to recompense the conversion. Finally, in all other things the judgment is affirmed.

Brian Quinn
Chief Justice

Reavis, S.J., not participating.