

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00176-CV
_____

NOBEL LEAF HOLDINGS LLC, APPELLANT

V.

FIRST UNITED BANK, APPELLEE

On Appeal from the 64th District Court
Castro County, Texas
Trial Court No. A10796-2203, Honorable Danah L. Zirpoli, Presiding

August 19, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This is a case over failure to release equipment pledged as collateral. After WTB Tea Company, LLC and Wendal Huseman, its guaranteeing member, defaulted on a promissory note, First United Bank attempted to recover the secured collateral. Appellant, Nobel Leaf Holdings, LLC, possessed the collateral with knowledge of First United's security interest and refused to release it. After a trial, the jury found Nobel Leaf liable for civil theft and awarded damages to First United. Nobel Leaf brings four issues on appeal. We affirm.

BACKGROUND

Wendal Huseman acquired a franchise from Nobel Leaf to open a NobiliTea store in Lubbock. To finance the venture, Huseman borrowed more than $200,000 from First United Bank as an operating loan. His entity, WTB Tea Company, LLC, borrowed an additional $78,000 from the bank to purchase equipment for the store. WTB's loans were secured by all equipment purchased with the proceeds. First United filed UCC-1 financing statements and Huseman personally guaranteed the WTB notes.

The Lubbock store opened in the summer of 2021 but quickly struggled. Tensions escalated in the fall when Jeff Hunt, Nobel Leaf's CEO, told Huseman "it was either his way or the highway." When Huseman chose "the highway" and to abandon his investment, Hunt "offered to come to Lubbock and kick [Huseman's] ass." Hunt specifically asked Huseman about loans on the equipment, and Huseman replied the total debt was approximately $228,000. Testimony from trial indicates Hunt knew the equipment was collateral for WTB's loans but said he would use it anyway to operate the store. Hunt later admitted that Nobel Leaf owned none of the equipment in the store.

Discussions between Hunt and Huseman culminated in a settlement agreement, with Nobel Leaf taking over the store in February 2022. Hunt signed the agreement, which acknowledged notice that First United financed the equipment and claimed security interests in it.

WTB defaulted on the notes. First United attempted to foreclose on the collateral, but Nobel Leaf refused to allow recovery of the equipment. When First United's loan officer called Hunt seeking peaceful recovery, Hunt would not allow the bank to enter the

store. Nobel Leaf made an offer to purchase the equipment from First United at a discounted price, but the bank declined.

At trial, Hunt offered shifting explanations for Nobel Leaf's refusal to allow the bank to recover the collateralized equipment. Hunt initially offered business justifications, claiming that it needed to continue operating the store because Nobel Leaf had guaranteed the commercial lease and the Lubbock location was strategically important. Hunt also contended Nobel Leaf held ownership rights based on franchise agreement provisions but later admitted that there was no language in the franchise agreement giving Nobel Leaf ownership. When challenged to show whether Nobel Leaf ever owned the equipment First United claimed as its collateral, Hunt replied, "The equipment, no, we did not own."

Litigation ensued in Castro County district court in March of 2022. While suit was pending, Nobel Leaf continued operating the store and using the equipment without paying for its use. The trial court set for hearing First United's request for temporary injunction for April 21, 2022. Two days before, Nobel Leaf filed an objection and moved to transfer venue to Lubbock County, claiming some of the equipment constituted real property. The trial court denied Nobel Leaf's motion.[1] In May and again in June 2022, the trial court ordered the clerk to issue a writ of injunction that enjoined Nobel Leaf from, among other things, "encumbering, alienating, conveying, or *transferring by sale or*

---

[1] We declined to grant mandamus relief. *In re Nobel Leaf Holdings*, LLC, No. 07-22-00225-CV, 2023 Tex. App. LEXIS 11, at *1 (Tex. App.—Amarillo Jan. 3, 2023, no pet.). While Nobel Leaf argues on appeal that certain equipment constituted fixtures for venue purposes, it makes no corresponding argument that affixing collateralized equipment affects First United's recovery.

3

*otherwise* the Collateral subject of this litigation." (emphasis added).[2] A Writ of injunction was issued on May 12, 2022, and an Agreed Amended Order Granting Application for Temporary Injunction was signed on June 23, 2022.

Despite these orders, Nobel Leaf sold the store to a third party for $100,000 in June 2023, with $60,000 designated for the store's contents, including the equipment that belonged to First United.

On August 16, 2023, the trial court issued a letter to the parties indicating it would grant summary judgment declaring that First United's security interests in the equipment were in priority to any interest held by Nobel Leaf. The court also said it was denying First United's motion for summary judgment under the Theft Act and for conversion. Six days later, before the trial court formalized its ruling in a written order,[3] Nobel Leaf executed a "Revised & Amended by Mutual Agreement of the Parties." The revised agreement recognized the possibility that First United might be granted a superior priority in the equipment. Even though consideration paid by the third party to take over the store remained at $100,000, the revised agreement indicated equipment was not sold or conveyed, and sought to designate the portion originally including equipment to be for operations, inventory, and goodwill.

At trial, Hunt maintained that Nobel Leaf violated no court order because, despite the express language prohibiting the sale of equipment, there was no bar to selling "the

---

[2] Nobel Leaf agreed to and requested the relief in the June order.

[3] The court signed the summary judgment order on August 29, 2023.

4

right to own a NobiliTea." Hunt acknowledged that Nobel Leaf used this litigation as a means to block First United from recovering its collateral.

The jury found Nobel Leaf liable on four claims and awarded damages on each. The jury awarded First United $83,991.43 for theft under the Theft Liability Act, $83,991.43 for conversion, and $57,182.43 for tortious interference with contract. The jury also awarded First United $110,359.96 in attorney's fees for the theft claim and another $110,359.96 in attorney's fees for the declaratory judgment claim. The jury awarded conditional appellate attorney's fees for both claims.[4] The trial court rendered judgment for all awards.[5]

## ANALYSIS

### Venue

In its first issue, Nobel Leaf contends the trial court abused its discretion by refusing to transfer venue to Lubbock County. Nobel Leaf argues venue is mandatory in Lubbock County under Section 15.011 because the case involves recovery of fixtures and real property interests, under Section 15.0115 because the dispute concerns property affixed to leased premises, and under Chapter 134 because the alleged theft occurred in Lubbock County.

---

[4] The jury also awarded attorney's fees to Huseman and WTB. Those awards are not on appeal.

[5] The judgment awards cumulative damages and fees using "IT IS FURTHER ORDERED" for each additional award. Because Nobel Leaf raises no issue regarding election of remedies, we interpret the judgment as written.

We previously addressed this venue issue when Nobel Leaf sought mandamus relief. *In re Nobel Leaf Holdings, LLC*, No. 07-22-00225-CV, 2023 Tex. App. LEXIS 11, at *5–6 (Tex. App.—Amarillo Jan. 3, 2023, no pet.). First United argues our prior decision binds Nobel Leaf under the law of the case doctrine.

Even setting aside the law of the case issue,[6] Nobel Leaf's venue challenge fails because it was untimely. Nobel Leaf filed its venue objection only two days before First United's temporary injunction hearing and raised the venue issue orally for the first time at that hearing. Rule 87.1 requires a moving party to request a setting and provide at least forty-five days' notice, except on leave of court. TEX. R. CIV. P. 87.1. Nobel Leaf provided neither the required notice nor requested leave for shortened notice.

After we denied mandamus relief, Nobel Leaf requested another hearing on venue transfer. The trial court again refused. Because the original motion was untimely, an even later request for a hearing cannot cure the defect. Moreover, Rule 87(5) provides that once a motion to transfer venue has been denied, the ruling is final and no further motions to transfer shall be considered. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 260 (Tex. 2008).

Nobel Leaf's first issue is overruled.

---

[6] We disagree that the law of the case doctrine applies. This doctrine prevents relitigating legal issues already decided by an appellate court on the merits in the same case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 717 (Tex. 2003). But mandamus denial without comment on the merits does not bind an appellate court in a subsequent appeal. *Perry Homes v. Cull*, 258 S.W.3d 580, 585–86 (Tex. 2008). When we denied Nobel Leaf's mandamus petition, we addressed only Rule 87.1's procedural requirements, not whether venue was proper.

Expert Testimony

In its second issue, Nobel Leaf argues the trial court abused its discretion by allowing Wendal Huseman to testify as an expert on equipment value and depreciation. We overrule the issue.

Rule of Evidence 702 permits a witness qualified as an expert to testify on specialized subjects if the testimony would assist the trier of fact in understanding evidence or determining a fact issue. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 73 (Tex 2023); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). The party offering the expert's testimony has the burden to prove that the witness has special knowledge about the matter he will be testifying.[7] *See Helena Chem. Co.*, 664 S.W.3d at 73. The party offering the expert's testimony has the burden to prove that the witness has special knowledge about the matter he will be testifying. *See id.*

To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Jackson v. Michelin N. Am., Inc.*, No. 07-16-00035-CV, 2018 Tex. App. LEXIS 7466 *4 (Tex. App.—Amarillo Sept. 10, 2018, pet. denied); *see also Gammill,* 972 S.W.3d at 720. To be reliable, the methods and procedures used as the basis of the testimony must not be a subjective belief or unsupported speculation. *Helena Chem. Co.*, 664 S.W.3d at 74. Irrelevant and unreliable

---

[7] The well-known test for abused discretion is whether the trial court acted without reference to any guiding rules or principles such that the ruling was arbitrary or unreasonable. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996).

evidence is inadmissible because it is of no assistance to the jury. *See Helena Chem. Co.*, 664 S.W.3d at 73.

In addition, a lay witness may offer opinion testimony if the opinion is rationally based on the witness's perception and helpful to understanding the testimony or determining a fact in issue. TEX. R. EVID. 701. The "Property Owner Rule" creates a presumption that a property owner possesses sufficient knowledge to offer an opinion on their property's fair market value. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011); *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996).

Huseman was designated as an expert regarding the collateral's fair market value. On voir dire, Huseman testified about his extensive research methodology. He had researched tea store equipment for ten years, visiting restaurant equipment stores and obtaining prices. He obtained bids from different manufacturers and evaluated equipment functionality and lifespan. Huseman opined he had more insight into equipment value than "the average Joe on the street."

While Huseman's depreciation methodology was speculative—he estimated "maybe 5 percent" without supporting analysis—he also testified as the property owner about its value.[8] A property owner is qualified to testify to their property's market value.

Moreover, the jury had ample evidence beyond Huseman's testimony. Hunt testified about the equipment's fair market value and the $60,000 price Nobel Leaf

---

[8] Nobel Leaf did not object to Huseman's ability to testify as property owner.

received when it sold the equipment to the third party in 2023. The trial court also admitted a detailed equipment list showing $92,459 in equipment values. This additional evidence provided a range of value from which the jury could assess.

Accordingly, assuming arguendo that the trial court erred in permitting Huseman to testify about depreciation of the equipment, such error was harmless in light of the additional evidence admitted without objection. TEX. R. APP. P. 44.1.

We overrule Nobel Leaf's second issue.

Jury Charge

In its third issue, Nobel Leaf argues the trial court improperly included Huseman's affidavit containing an equipment list in the jury charge. The argument fails for two reasons: Nobel Leaf never objected, and the charge contains no such affidavit.

Nobel Leaf argues this alleged inclusion allowed Huseman's affidavit regarding the cost and depreciation value of equipment to be included in the charge. But among the objections Nobel Leaf's counsel raised during the charge conference (double recovery, attorney's fees, declaratory judgment, and sufficiency of evidence) nothing was said about any equipment list. To preserve jury charge error, a party must specifically object to the matter complained of. TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)(1)(A) *; THF Hous. Mgmt Corp. v. Gideon*, 617 S.W.3d 624, 632 (Tex. App.—Amarillo 2021, no pet. h.).

More fundamentally, Nobel Leaf's factual premise is wrong. Our review of the signed charge reveals no affidavit from Huseman and no statements regarding cost and depreciation. The charge lists items of property, but the evidence likewise discusses such

9

property.  Nobel Leaf provides no basis in fact or law for its contention that inclusion of the list "likely caused the rendition of a negative verdict, of the sum described, against [Nobel Leaf]."

We overrule Appellant's third issue.

Civil Theft

In its final issue, Nobel Leaf argues the jury's adverse finding under the Texas Theft Liability Act lacks legally sufficient evidence of intent.[9]  We disagree.

When reviewing a legal-sufficiency challenge, we view all evidence in the light most favorable to the verdict and credit favorable evidence if a reasonable juror could, while disregarding contrary evidence unless a reasonable juror could not.  *Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 97 (Tex. 2024); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Under the Texas Theft Liability Act, a person is liable for damages if they commit theft as defined by the Texas Penal Code.  TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001-.005.  Relevant here, theft requires proof that the defendant unlawfully appropriated property "with intent to deprive the owner of the property."  TEX. PENAL CODE ANN. § 31.03(a).  Intent must exist at the moment of appropriation and can be inferred from the defendant's conduct and surrounding circumstances.  *First State Bank, N.A. v. Morse*,

_____

[9] Nobel Leaf does not challenge the jury's adverse findings as to any other cause of action or any award of attorney's fees or conditional fees.

10

227 S.W.3d 820, 826 (Tex. App.—Amarillo 2007); *McCullough v. Scarbrough, Medlin & Associates, Inc.,* 435 S.W.3d 87, 906 (Tex. App.—Dallas 2014).

The evidence amply demonstrates Nobel Leaf's knowledge of First United's superior rights and intentional appropriation of the collateral. When the Lubbock NobiliTea store struggled and Huseman elected to abandon his investment, Hunt specifically asked Huseman about loans on the equipment and learned the equipment was collateral for WTB's loans. Hunt said he would use it anyway to operate the store. Hunt later admitted that Nobel Leaf owned none of the equipment.

The January 2022 settlement agreement Hunt signed with Huseman also acknowledged First United claimed a security interest in the equipment. Despite this knowledge, Nobel Leaf took over the store in February 2022 and possessed all the equipment. When WTB defaulted and First United attempted recovery, Nobel Leaf refused to allow the bank to enter the store. When asked if Nobel Leaf "utilized these proceedings that were started by First United Bank to block First United Bank from removing any collateral from the store," Hunt answered "The collateral is still in the store. Yes."

Nobel Leaf then retained and used the equipment without payment for over 18 months while the litigation was pending. Despite court orders enjoining Nobel Leaf from "conveying, or transferring by sale or otherwise the Collateral subject of this litigation," Nobel Leaf sold the store to a third party, with 60% of the sales price designated for the store's contents, including First United's equipment. When the trial court issued a letter indicating it would grant summary judgment declaring First United's superior security

11

interests, Nobel Leaf faced a choice: return the equipment to its owner or press forward with what was never theirs. Nobel Leaf chose the latter, executing a revised agreement attempting to restructure the sale and disclaim sale of the equipment. Hunt attempted to maintain that Nobel Leaf violated no court order because there was no bar to selling "the right to own a NobiliTea," but his semantic distinction cannot obscure the reality that Nobel Leaf continued to deprive First United of the equipment it knew belonged to the bank. The jury was in the best position to assess whether Nobel Leaf's intentions were indeed noble; it found that Appellant acted with intent to deprive First United of the equipment.

More than a scintilla of evidence supports the jury's finding that Nobel Leaf unlawfully appropriated the equipment with intent to deprive First United of the collateral. The evidence when viewed in a light most favorable to the verdict allows a reasonable factfinder to find that Nobel Leaf possessed full knowledge of First United's security interests, deliberately refused to allow recovery despite having zero ownership rights, used the equipment without payment for over a year, and ultimately sold the equipment in violation of court orders.

We overrule Nobel Leaf's fourth issue.

## CONCLUSION

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


Lawrence M. Doss
Justice


12